A. C. DONALDSON v. STATE.

No. A-9842. Sept. 24, 1941.
(117 P. 2d 555.)

42

H. P. Hosey and I. C. Sprague, both of Idabel, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, J.   The defendant, A. C. Donaldson, was charged in the district court of McCurtain county with the crime of rape in the first degree; was tried, found guilty, and sentenced to serve 15 years in the State Penitentiary, and has appealed.

The defendant in his brief presents four assignments of error as follows:

(1)   Error of the court in overruling defendant's motion for a continuance.

(2)   Error of the court in overruling defendant's motion to suppress the evidence.

(3)   Error of the court in denying defendant's challenge to the special venire of jurors.

(4)   Error of the court in refusing to instruct the jury on assault with intent to commit rape.

The first two assignments of error are without merit. This case will have to be retried, and it is not necessary to discuss these two assignments of error other than to state that in connection with the second assignment of error the court ruled properly in admitting in evidence the rag found by the officers at the scene of the alleged attack upon the little girl named in the information.

The defendant has extensively briefed the proposition urged in his third assignment of error. The Attorney General in his answer brief has wholly omitted any reference to this question. The authorities cited by counsel for the defendant fully support the contention of the defendant, and the failure of the Attorney General to brief this question is taken by this court as a confession by that office that the defendant's contention in this regard is correct. However, despite the lack of a brief

on this point by the state, this court has closely examined the record and the various authorities, pro and con, upon the proposition urged, and has come to the conclusion that the court erred in not sustaining the challenge of the defendant to the special venire on account of the implied bias of the sheriff, Joe Hough.

It is disclosed by the record that when this case was called for trial, a jury from the regular panel was called into the jury box, and proceedings towards a selection of a jury to try said case were begun. By reason of a number of jurors being excused, the court during the examination issued an order directed to the sheriff to summon a special venire of 20 talesmen, and recessed the court until the following day at 9 a.m.

The following morning at the convening of court, and before any additional jurors were called to the box, the defendant filed a written challenge to the open and special venire, alleging that Joe Hough, sheriff of McCurtain county, had summoned said special venire; that he had been active on behalf of the prosecution in this case; that he had talked with witnesses, and had formed and expressed an opinion as to the guilt of the defendant, and had taken the prosecuting witness away and secreted her so that counsel for the defendant could not interview her, and had brought her back to the county seat just before the commencement of the trial; that two of the deputies of said sheriff are material witnesses for the state and are endorsed on the information as such; that by reason of the bias and prejudice of said sheriff against the defendant, any special venire summoned by said sheriff would be biased and prejudiced against the defendant.

After this challenge in writing was filed, the defendant called the sheriff and had him sworn and examined

concerning said matter. The sheriff testified in substance that he knew in general about the case, but had not spent any special time on it; that two of his deputies, Mr. Butler and Mr. Tinsley, had assisted in the investigation of the facts leading up to the charges being filed against the defendant, and were material witnesses for the state. That at the direction of the county attorney he called the superintendent of the girls' school at Tecumseh to arrange to take the prosecuting witness to that institution; that he directed one of his deputies to take the girl to Tecumseh, but that he went after her at the direction of the county attorney on Sunday before the commencement of the trial of the case on Monday. That he did not have a commitment to the institution for the girl, but took her there at the request of the county attorney.

Among other questions and answers given by the sheriff are the following:

"Q. I will ask you, Mr. Hough, if you haven't helped the prosecution in this case to select the jurors, gave them information as to what jurors would make good jurors and what would not? A. Well, I just can't hardly say about that. That I have helped these two men to select these twelve men they have up here? Q. Yes, gave them information? A. I have expressed an opinion about some of them, yes, sir. * * * Q. I will ask you if you did not talk to Ed Shipp in the county judge's office yesterday in a conversation about some of the jurors on this case, whether or not they should be kept or discharged? A. I haven't. I don't recall having a conversation with Ed Shipp at all. Q. Or Tom Finney? A. Tom and I have talked about them, but promiscuously talked about them. Q. Just talked about the jurors who were on the panel and the ones that were in the box, you were talking about them? A. We didn't go into detail about them. Q. I am not asking if you went into detail, but talked about the jurors in the box? A. We expressed an opinion about them, talked about some of the men would make

good jurors and some might not. Q. And some might not? A. Yes, sir."

On cross-examination the sheriff stated that he was not a witness to any of the facts in the case, had not been subpoenaed by either side, and did not have any bias or prejudice against the defendant. That he did not talk to any member of his special venire when he summoned them about the facts of the case or suggest to them whether the defendant was guilty or innocent.

On redirect examination the sheriff admitted summoning K. S. Tinsley, who is the father of his deputy sheriff, Clyde Tinsley, who was a material witness for the state in the case.

In the recent case of Kizer v. State, 64 Okla. Cr. 222, 78 P. 2d 831, 832, this question was discussed at length by Judge Barefoot. In that case it was held:

"Under the provisions of section 2987, Oklahoma Statutes 1931, Okla. St. Ann. tit. 22, § 639, when a panel is formed, or in part formed, from jurors whose names are not drawn from the jury box, a challenge may be taken to the panel on account of any bias of the officer who summoned them, which would be good ground of challenge to a juror.

"It is essential to the fair and impartial administration of justice that talesmen, or a special venire, should be summoned by an officer who is not disqualified by reason of interest, bias, or prejudice.

"The trial court in the exercise of a sound discretion has the right to issue an order commanding the sheriff, or other suitable person, to summon jurors from the body of the county, or from such portion of the county as the court may order."

In the body of the opinion it is stated:

"There is no more important feature in the trial of a case, both from the standpoint of the state and the defendant, than the selection of a fair and impartial jury.

Our Legislature has written into the laws of this state just how jurors may be selected and has placed around it every precaution to the end that a fair and impartial jury may be had to protect both the rights of the state and the defendant. A jury commission is appointed by the district judge, and after taking an oath to faithfully perform their duty, they select the names of citizens from the body of the county all of whom are tax payers of the county. 38 Okla. St. Ann. § 1 et seq. These names are placed in a box which is securely locked and from which, at the proper time, certain county officials draw the names for the purpose of securing the jury for a term of court. The law also provides that under certain circumstances, the district judge shall have the discretionary power to issue an order directing the sheriff 'or some other suitable person' to summon talesmen or a special venire when certain conditions demand it. It should, however, be kept in mind that the real purpose of the law, and especially in the trial of criminal cases, is that all trials shall be by jurors whose names have been selected by the jury commission, and drawn in the regular manner from the jury box, and that the other mode of selection is an exception to the general rule, and only to be used when the facts warrant it, in the discretion of the district judge. This discretion should not be abused, for it will readily be seen that it may be used to the advantage or disadvantage either of the state or the defendant. Oklahoma Statutes, 1931, § 2987, Okla. St. Ann. tit. 22, § 639, p. 356, provides:

" 'When the panel is formed from persons whose names are not drawn as jurors, a challenge may be taken to the panel on account of any bias of the officer who summoned them, which would be good ground of challenge to a juror. Such challenge must be made in the same form, and determined in the same manner as if made to a juror.' "

In Koontz v. State, 10 Okla. Cr. 553, 139 P. 842, 844, Ann. Cas. 1916A, 689, it is stated:

" "The language of the statute is so plain that no room is left for interpretation. It authorizes a challenge to

the panel, on account of the bias of the officer who summons a jury on an open or special venire, upon what would be good ground of challenge to a juror for bias. If, then, a challenge for cause would have been sustained against a person called as a juror because he was a material witness for the state, a challenge would also lie upon the same ground to a panel summoned by him. If he would not be qualified as a juror because of actual or implied bias, as defined by sections 5858 and 5859, Rev. Laws 1910; §§ 2997 and 2998, O. S. 1931, 22 Okla. St. Ann. §§ 659 and 660, he would also be disqualified for the same reason to summon a jury, in whole or in part, whose names are not drawn as jurors from the jury box."

The above rule has had the support of this court in many cases. See Harjo v. United States, 1 Okla. Cr. 590, 98 P. 1021, 20 L.R.A., N.S., 1013; Liddell v. State, 18 Okla. Cr. 87, 193 P. 52, 16 A.L.R. 405; Leigh v. State, 34 Okla. Cr. 338, 246 P. 667; Shepherd v. State, 35 Okla. Cr. 405, 192 P. 235; Welch v. State, 36 Okla. Cr. 298, 254 P. 503; Hammock v. State, 52 Okla. Cr. 429, 6 P. 2d 16.

In the instant case it can hardly be said that a sheriff who had two deputies who were very material witnesses for the state, and who had transported the prosecuting witness over 200 miles to keep her away from the scene of the trial until the day before the trial commenced, and who had consulted with the special prosecutor concerning the names of those men on the regular jury panel who would make good jurors in said case, is not disqualified under the statute.

The record further discloses that the defendant exhausted all of his nine peremptory challenges, and that he was forced to accept three of the talesmen from the special venire on the jury which heard this case.

Where it becomes necessary to secure additional jurors for service, it would be a very easy matter to draw their names from the jury box in the manner prescribed by law; then the jurors, thus selected, in this modern age of telephones and automobiles could be summoned in a short time without any serious delay of the trial by the sheriff or some other suitable person designated by the court in case of disqualification of the sheriff to act. Section 800, O. S. 1931, 38 Okla. St. Ann. § 5.

The fact that the sheriff summoned the father of one of his deputies, who was a state witness, indicates the length a sheriff can go to assist in getting jurors who would be favorable to the state's case.

In civil cases, the sheriff very seldom has any interest in the litigation, and a special venire summoned by him would probably be above suspicion; but it would be hard to find a criminal case where the sheriff is not prejudiced against the defendant. This statement is not made to be critical of the sheriffs for their attitude, as generally they are in possession of information which convinces them of the defendant's guilt. But regardless of the guilt or innocence of a person charged with crime, he is entitled to be tried to a jury that is fair and impartial and which has not prejudged the case. For that reason the trial courts who feel that an open venire should be issued should be very careful to see that the sheriff is qualified to summon the jurors; and, if there is any taint of suspicion as to the qualification of the sheriff to thus summon the prospective jurors, the court should designate some other suitable person to act.

The statute, section 2987, O. S. 1931, 22 Okla. St. Ann. § 639, fixing the qualification of the person summoning the special venire, is very strict; and we give full

force to it to the end that every person on trial for his life shall be tried by a fair and impartial jury.

As to the fourth assignment of error, this court is of the opinion, in view of the necessity of a retrial of this case, that the court should instruct the jury on the question of an assault with intent to commit rape. The defendant presented a requested instruction to this effect, but the same was denied.

This assignment of error presents a difficult question. The evidence probably sustains the court's ruling; and, if this were the only assignment of error, we would not reverse the case on this assignment alone. But in view of the fact that the prosecuting witness, when first asked concerning this alleged offense, stated in writing, "He tried once," might indicate that the defendant tried to commit rape, but did not accomplish his purpose. Such statement is probably sufficient to require an instruction on assault with intent to commit rape when the same is considered with the testimony of the doctors that the female organ of the prosecuting witness had been penetrated, but that the condition they found could have been caused otherwise than by sexual intercourse. We are making this statement for the reason that the law has thrown many safeguards around a person charged with crime for his protection, and he is entitled to have the jury instructed upon the issues raised by the evidence. Where a serious question arises as to whether an instruction requested by defendant should be given, the doubt should be resolved in defendant's favor.

No complaint is made in the brief of the defendant concerning the sufficiency of the evidence to sustain the conviction, and it is not necessary in this opinion for us to discuss the evidence. The evidence introduced by the state, if believed by the jury, shows that the defend-

ant committed a diabolical act, and is amply sufficient to support a conviction; however, in view of what we have heretofore said, this cause is reversed and remanded with instructions to the district court of McCurtain county to grant defendant a new trial.

BAREFOOT, P. J., and DOYLE, J., concur.